UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: KATHRYN LOVATO,                                    No. 21-10144-j13

Debtor.

**<u>MEMORANDUM OPINION</u>**

Creditor Real Property Financial, PSP ("RPF") seeks relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and 362(d)(4). *See* First Amended Motion for Relief from Automatic Stay ("Motion for Relief from Stay" – Doc. 40). The Court held a final evidentiary hearing on the Motion for Relief from Stay on June 4, 2021, heard counsel's closing arguments on June 22, 2021, and took the matter under advisement. Having considered the evidence and counsels' legal argument in light of the relevant case law, the Court finds and concludes that "cause" does not exist to grant relief from the automatic stay under § 362(d)(1), nor has RPF sufficiently demonstrated that Debtor's current bankruptcy filing is part of a scheme to hinder, delay, or defraud RPF involving multiple bankruptcy filings affecting the same real property warranting in rem stay relief under § 362(d)(4). The Court will, therefore, deny the Motion for Relief from Stay.

FACTS[1]

Debtor's residence is located at 3411 Calle Viejo in Santa Fe, New Mexico (the "Property"). The Property is encumbered by a first mortgage lien in the current amount of approximately $398,000.00. *See* Exhibit C. In 2007, Debtor obtained a home equity line of credit on the Property and signed a promissory note in the principal amount of $55,000.00 (the "Note"). *See* Exhibit 2. The Note is secured by a Line of Credit Mortgage on the Property, which is a

---

[1] With the parties' consent, the Court took judicial notice of the documents filed in this bankruptcy case and in Debtor's prior bankruptcy case, Case No. 15-11626-t7.

second lien on the Property. *See* Exhibit 3. RPF acquired the Note and Mortgage on the Property in 2015. *See* Exhibits 2 and 3; Testimony of Michelle Garbus.

Debtor has a second residential property located at 2924 Pueblo Jacona (the "Second Property"). Debtor treats the Second Property as an investment rental property. The Second Property is subject to a first and second mortgage. *See* Exhibit C.

*First Bankruptcy Case – Chapter 7*

Debtor filed her first bankruptcy case under chapter 7 of the bankruptcy code on June 18, 2015 as Case No. 15-11626-t7 (the "First Bankruptcy Case"). Debtor scheduled the Property in her First Bankruptcy Case with a value of $350,000.00. *See* Case No. 15-11626-ty, Doc. 1 – Schedule A. Debtor scheduled the Second Property in her First Bankruptcy Case with a value of $230,000.00 *Id.* Debtor's Schedule I filed in the First Bankruptcy Case reflects that on the petition date Debtor was not employed and that she received net rental income of $3,753.45 per month. *See* Case No. 15-11626-t7, Doc. 1 – Schedule I. Debtor anticipated a post-petition decrease in income, reporting that she had been approved for Social Security disability benefits of $768 per month but that her other income will be limited to $1,090 per month. *Id.* at item 13. Debtor received a chapter 7 discharge in the First Bankruptcy Case on December 15, 2015. Debtor's personal liability under the Note on the Property was discharged in the First Bankruptcy Case.

*First Loan Modification*

In 2016, after Debtor received a discharge in the First Bankruptcy Case, Debtor and RPF entered into a Loan Modification Agreement (the "First Loan Modification" – Exhibit 5) to restructure the loan and allow Debtor to stay in the Property. At that time, the unpaid principal balance due under the Note and Mortgage was $23,984.25. *See* Exhibit 5. To obtain the First

Loan Modification, Debtor completed a Borrower Financial Statement ("First BFS"). *See* Exhibit 4. The First BFS has a space to identify "Other Real Estate" and "Rents Received." *Id.* Debtor wrote "-0-" in the spaces for those items and did not disclose the Second Property. *Id.* Debtor testified that she did not disclose the Second Property because at some point she had a buyer for the Second Property, but that she later changed her mind and retained the Second Property. The timing of the possible sale of the Second Property is not clear from Debtor's testimony. Debtor did not make any payments under the First Loan Modification. Debtor suffered from some mental health issues following the death of one of her daughters. After entering into to First Loan Modification Debtor lost her job, started receiving disability benefits, and went to counseling to help cope with her depression.

*The Foreclosure Action and the Second Loan Modification*

RPF filed a complaint to foreclose its interest in the Property in 2016 (the "Foreclosure Action"). After initiating the Foreclosure Action, RPF continued to work with the Debtor in an effort to allow Debtor to stay in her home. Debtor and RPF entered into a second Loan Modification Agreement (the "Second Loan Modification" – Exhibit 7) on March 14, 2018. At that time the unpaid principal balance due under the Note and Mortgage was $32,641.50. *Id.* The Second Loan Modification recites that the loan has been in default due to non-payment of installment payments from June 15, 2016 to March 14, 2018. Debtor completed another Borrower Financial Statement ("Second BFS") in connection with the Second Loan Modification. *See* Exhibit 6. Debtor did not disclose the Second Property or any rents received from the Second Property on the Second BFS. The spaces on the Second BFS for "Other Real Estate" and "Rents Received" are blank. *Id.* Debtor and RPF entered into the Second Loan Modification so that Debtor could stay in the Property. In negotiating the Second Loan

3

Modification, Debtor and RPF agreed that Debtor's daughter, who resided in the Property, would start paying rent to Debtor which would help Debtor afford to make the payments under the Second Loan Modification. Debtor defaulted under the Second Loan Modification after making one payment. *See* Exhibit 8.

A trial in the Foreclosure Action was scheduled for February 10, 2021.

*The Second Bankruptcy Case – Chapter 13*

On February 9, 2021, the day before the scheduled foreclosure trial, Debtor filed the current bankruptcy case under chapter 13 of the Bankruptcy Code (the "Second Bankruptcy Case"). The trial in the Foreclosure Action did not occur because Debtor filed the Second Bankruptcy Case. Debtor did not appear at the scheduled foreclosure trial. Debtor testified that she did not know about the scheduled foreclosure trial but that she filed the Second Bankruptcy Case to try to save her home and to keep her business going. Debtor runs a childcare service from her home and filed the Second Bankruptcy Case in an effort to keep her home and to keep her business going. Schedule I filed in the Second Bankruptcy Case shows that she is self-employed as a home childcare provider, and that she receives combined net rental income and income from operating a business of $4,050.00 per month plus monthly social security benefits of $885.00. *See* Doc. 1.

Debtor scheduled the Property in the Second Bankruptcy Case with a value of $390,000.00. *See* Exhibit C. Debtor testified that she purchased the Property for $412,000.00, and that she had some real estate agents look at the Property who advised her she would not be able to sell the Property now for what she purchased it because of the KITEC plumbing. Debtor scheduled the Second Property in the Second Bankruptcy Case with a value of $350,000.00. *See* Exhibit C. Debtor scheduled RPF's claim in the amount of $37,147.31. *See* Exhibit D. RPF filed

a proof of claim asserting a secured claim against the Property in the amount of $75,855.15. *See* Claim No. 9-1. A large portion of the claim is attributable to attorney's fees incurred by RPF. *Id.*

Debtor filed a chapter 13 plan (the "Plan") with the petition. *See* Doc. 5. Debtor's Plan values the Property at $390,000.00 and proposes to strip off RPF's second mortgage as wholly unsecured. *Id.*

*Insurance on the Property*

Debtor obtained homeowner's insurance on the Property but did not name RPF as an additional insured. *See* Exhibit 10. The policy initially insured the Property for $533,000.00, was then reduced to $317,000.00, and ultimately cancelled by the customer. *Id.* A second policy that Debtor obtained insured the Property for $382,000.00, but that policy was cancelled by the insurance company. *See* Exhibit 11. RPF received notice of the cancellation and, as a result, obtained forced-place insurance on the Property to protect its interest. *See* Exhibit 12. Debtor testified that she had difficulty obtaining insurance because the Property has KITEC plumbing and that the insurance company dropped her because KITEC plumbing was too great a risk.

*The Property Value*

RPF's appraiser appraised the Property as of February 9, 2021 with a value of $505,000.00. *See* Exhibit 1, p. 4. The appraiser made an "extraordinary assumption" that the Property is "free of unknown defects such as KITEC plumbing etc." *See* Exhibit 1, p. 18. In fact, the Property has KITEC plumbing, which would have a material negative affect on its value. Debtor has already spent at least $10,000.00 in plumbing repairs to the Property caused by defective pipes in just one area of the Property. Debtor reports that plumbing professionals who have done repairs on the Property recommend replacing all KITEC pipes in the Property. The evidence before the Court is insufficient for the Court to determine the value of the Property.

DISCUSSION

I. Stay relief for "cause" under § 362(d)(1) including a lack of adequate protection

Under § 362(d)(1), relief from the automatic stay may be granted "for cause, including the lack of adequate protection of an interest in property . . . ." RPF did not assert in its Motion that it lacks adequate protection.[2] To the contrary, RPF believes the Property is worth much more than Debtor claims, so that RPF's second lien position is fully secured.

RPF contends that "cause" exists to grant relief from the automatic stay based on Debtor's alleged bad faith in filing this chapter 13 case on the eve of the foreclosure trial. RPF argues further that Debtor's valuation of the Property in the Second Bankruptcy Case evidences Debtor's bad faith in filing her chapter 13 case. Finally, RPF asserts that Debtor's pre-petition failure to disclose the Second Property and associated rents on the First BFS and Second BFS submitted to RPF in connection with the two loan modifications is sufficient cause for relief from the automatic stay. Considering these factors in light of the totality of the circumstances, the Court finds and concludes that there is insufficient "cause" for stay relief under § 362(d)(1). The Court will address each factor in turn.

---

[2] At closing argument, after the close of the evidence, counsel for RPF asserted for the first time that it lacked adequate protection of its collateral based on Debtor's failure to maintain insurance on the Property. Failure to maintain insurance on property can constitute a lack of adequate protection even when there is an equity cushion in the property. *See In re Anthem Communities/RBG, LLC*, 267 B.R. 867, 871 (Bankr. D. Colo. 2001) (erosion of a creditors' collateral position resulting from debtor's non-payment of taxes, failure to insure the property, and/or increasing secured debt through interest accruals can establish a lack of adequate protection). Here, RPF has obtained forced-place insurance to protect its interest in the Property. Further, the Property value is increasing, RPF maintains that the Property is worth more than the total amount of the liens against the Property, and there is no evidence that RPF's alleged equity cushion has eroded or that RPF is at risk by Debtor not maintaining insurance. RPF is adequately protected. Nevertheless, under the separate "cause" standard of § 362(d)(1), it may be appropriate for the Court to condition the continuance of the automatic stay on the Debtor insuring the Property. Debtor does not oppose this requirement.

Except for cause in the form of lack of adequate protection, "cause" under § 362(d)(1) is not defined by the Bankruptcy Code. It "is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Project Orange Associates, LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (quoting *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)); *see also Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987) ("Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis.") (quoting *In re Castlerock Properties,* 781 F.2d 159, 163 (9th Cir. 1986) (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985))); *Carbaugh v. Carbaugh (In re Carbaugh)*, 278 B.R. 512, 525 (10th Cir. BAP 2002) ("Cause" under § 362(d)(1) is a "discretionary determination made on a case-by-case basis."). "A creditor seeking relief from the automatic stay for 'cause' bears the initial burden of going forward to demonstrate sufficient grounds to lift the stay." *In re Thorp*, 624 B.R. 726, 740 (Bankr. D.N.M. 2020) (citing *In re DB Capital Holdings, LLC*, 454 B.R. 804, 816 (Bankr. D. Colo. 2011)).

RPF argues cause exists to modify the stay because Debtor filed her chapter 13 case in bad faith. A debtor's bad faith in filing a chapter 13 case may constitute sufficient "cause" for stay relief under § 362(d)(1). *In re Juarez*, 533 B.R. 818, 822 (Bankr. D. Colo. 2015) ("[W]here a court finds that a case has been filed in bad faith, such a finding would constitute cause for lifting the stay under § 362(d)(1)."); *see also In re Rouse*, 301 B.R. 86 (Bankr. D.Colo. 2003) (considering whether debtor's pre-petition bad faith in procuring home equity line of credit constituted cause for stay relief under § 362(d)(1)); *In re Porter*, 371 B.R. 739, 745 (Bankr. E.D. Pa. 2007) ("[A] bad-faith chapter 13 filing can establish cause to terminate the stay [under § 362(d)(1)] independent of the issue of adequate protection.") (citing *In re Maurice*, 167 B.R. 114, 125 (Bankr. N.D. Ill. 1994)).

RPF relies on the fact that Debtor filed her chapter 13 bankruptcy case on the eve of foreclosure as strong evidence of bad faith. Although filing a bankruptcy case on the eve of foreclosure may be probative of a debtor's bad faith, it is not necessarily an indication of bad faith. *In re Cusano*, 431 B.R. 726, 735 (6th Cir. BAP 2010); *see also In re Éclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr. S.D.N.Y. 2000) ("It is well settled . . . that the filing of a bankruptcy petition on the eve of a foreclosure or eviction does not, by itself, establish a bad faith filing or 'cause' for relief from the stay."). The timing of the bankruptcy filing is a factor the Court will consider when evaluating "cause" under the totality of the circumstances. *Éclair Bakery,* 255 B.R. at 137.

RPF next asserts that Debtor acted in bad faith in valuing the Property in her bankruptcy schedules and plan at $390,000.00, when RPF's appraiser valued the Property at more than $500,000.00. RPF's appraisal of the Property reflected a value of $505,000.00. However, the appraiser made an "extraordinary assumption" that the Property does not have KITEC plumbing when, in fact, the Property has KITEC plumbing. The appraiser did not take the condition of the Property into account because RPF did not retain a property inspector to assess the condition of the Property. KITEC plumbing can have a material negative affect on a property's value. RPF's appraisal fails to establish the value of the Property because it does not account for the KITEC plumbing. Debtor's testimony regarding the Property's value was likewise unsatisfactory. She gave unsubstantiated testimony that realtors who looked at the Property told her that she would not be able to sell the Property now for the price she initially paid for the Property.

The valuation evidence now before the Court is insufficient to conclude that Debtor's valuation of the Property in the Second Bankruptcy Case and in her chapter 13 plan evidences

8

bad faith. The evidence is insufficient to enable the Court to make a finding of the Property's value.

Finally, RPF's counsel argued that Debtor's failure to disclose the Second Property and associated rents on the First BFS and the Second BFS would have made a difference in RPF's decision to enter into the two loan modification agreements. But RPF's principal, Michelle Garbus, did not testify that RPF would not have entered into the two loan modification agreements had it known of the Second Property and the rental income from the Second Property. She testified that RPF must have a Borrower Financial Statement as part of the loan modification application on file so it can consider the loan modification. Ms. Garbus testified further that RPF was doing all it could to work with the Debtor so that Debtor would be able to stay in the Property and make payments on the loan. Debtor testified that she did not disclose the Second Property because she had plans to sell that property, but then changed her mind. In the Second BFS, Debtor left those line items blank but did not affirmatively represent that she did not have any other real property or receive rents from any other property. Nevertheless, Debtor should have listed the Second Property and the rental income from that property in the First BFS and the Second BFS.

This bankruptcy case is the first case Debtor filed to stop RPF's foreclosure action. The First Bankruptcy Case was filed before RPF had acquired the loan and before RPF had initiated its foreclosure action. Debtor's bankruptcy schedules filed in this chapter 13 case indicate that she has income to find a chapter 13 plan. Although Debtor's plan seeks to strip off RPF's mortgage as wholly unsecured, taking advantage of the benefits that may be available to her under the Bankruptcy Code in an effort to reorganize her debts does not evidence bad faith. Whether Debtor will be able to confirm the plan as proposed is not yet before the Court. Taking

9

into account the totality of the circumstances, including the filing of the bankruptcy case on the eve of a foreclosure trial, Debtor's pre-petition conduct in failing to disclose the Second Property and associated rents on the First BFS and the Second BFS, and Debtor's estimate of the value of the Property, the Court concludes that RPF has not established "cause" as a ground for modifying the automatic stay.

    II.    <u>In rem stay relief under § 362(d)(4)</u>

Under § 362(d)(4), stay relief can be granted with respect to the Property for a period of two years upon a showing that the debtor filed the current bankruptcy petition as "part of a "scheme to delay, hinder, or defraud creditors" involving "multiple bankruptcy filings affecting such real property."[3] In rem stay relief under § 362(d)(4) grants specific prospective protection that prevents the debtor "and any other third party with an interest in the property to obtain the benefits provided by the automatic stay in future bankruptcy cases for a period of two years." *In re Abdul Muhaimin*, 343 B.R. 159, 169 (Bankr. D. Md. 2006). In rem stay relief is an extraordinary remedy to be determined based on the totality of the circumstances. *In re Danley*, 540 B.R. 468, 476 (Bankr. M.D. Ala. 2015). The party requesting in rem stay relief under § 362(d)(4) bears the initial burden of going forward with sufficient evidence "to establish a prima facie case as to all the elements," although the party opposing stay relief bears the ultimate burden of persuasion on all issues except the debtor's equity in the property. *In re Lee*, 467 B.R. 906, 920 (6th Cir. BAP 2012) (quoting *In re Poissant*, 405 B.R. 267, 273 (Bankr. N.D. Ohio 2009)); *see also Abdul Muhaimin*, 343 B.R. at 169-70 (explaining that the burden of proof under § 362(g) has generally been interpreted as a burden of persuasion, so that the party requesting

---

[3] Alternatively, in rem stay relief may be granted under § 362(d)(4) if the scheme to hinder, delay, or defraud creditors involved the "transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval . . . ."

stay relief bears the burden of going forward with evidence sufficient to establish *prima facie* cause for relief, even though the ultimate burden of persuasion remains with the party opposing stay relief as to all issues other than equity) (citing *In re Busch*, 294 B.R. 137, 140-41 (10th Cir. BAP 2003) (remaining citations omitted)); *In re Tejal Inv., LLC,* No. 12-28606, 2012 WL 6186159, at *5 (Bankr. D. Utah Dec. 12, 2021) ("A creditor seeking relief from the stay [under § 362(d)(4)] must make out a *prima facie* case as to each element.") (citing *Lee*, 467 B.R. at 920).

The required elements for in rem stay relief are: 1) the debtor's latest bankruptcy filing was part of a scheme; 2) the debtor's scheme intended to hinder, delay, or defraud the creditor; and 3) the scheme involved either (a) a transfer of some interest in the real property at issue absent prior approval from the court or the creditor or (b) multiple bankruptcy filings that affected the property at issue. *In re McGrath*, 625 B.R. 774, 782 (Bankr. D.N.M. 2020) (citing *Tejal Inv.,* 2012 WL 6186159, at *5).

Courts characterize "scheme" under this section as a "systemic plan" or "artful plot" that evidences a debtor's "wrongful motive or intent." *In re Hutchins,* No. 16-10262 HRT, 2016 WL 3573966, at *3 (Bankr. D. Colo. June 23, 2016) (relying on the definition of "scheme" in Black's Law Dictionary); *In re Macaulay,* No. 11-07382-DD, 2012 WL 2919154, at *3 (Bankr. D.S.C. July 16, 2012) ("A 'scheme,' for purposes of § 362(d)(4) 'is an intentional artful plot or plan to delay, hinder [or] defraud creditors.'") (quoting *In re Wilke*, 429 B.R. 916, 922 (Bankr. N.D. Ill. 2010)); *In re Smith*, 395 B.R. 711, 719 (Bankr. D. Kan. 2008) ("The word 'scheme' refers to a plan or design or an 'artful plot.'"). Multiple bankruptcy filings alone, even if they have the effect of delaying a creditor's foreclosure efforts, will not satisfy § 362(d)(4)'s requirement of a scheme to hinder, delay or defraud for in rem stay relief. *See Hutchins*, 2016 WL 3573966, at *3

("The mere fact that a bankruptcy filing has the effect of hindering or delaying a scheduled foreclosure does not rise to the level of a 'scheme' to hinder, delay or defraud as contemplated by § 362(d)(4)."). This is because all bankruptcy filings have the effect of delaying creditors, at least for the short term, and many bankruptcies are filed on the eve of foreclosure to stop a creditor's collection efforts and obtain the protection of the automatic stay. *See Danley*, 540 B.R. at 476.

Factors relevant to whether a debtor has engaged in a scheme to hinder, delay or defraud a creditor by filing multiple bankruptcy cases include: (a) serial filings to stop a foreclosure; (b) the timing of the bankruptcy filings relative to each other, to proceedings in the foreclosure action, and to scheduled foreclosure sales; (c) lack of changed circumstances between bankruptcy filings; (d) failure to prosecute bankruptcy cases or to honor the obligations of a debtor in the bankruptcy cases, or other bad faith conduct in connection with the bankruptcy cases; (e) the inability to fund a plan; (f) multiple bankruptcy filings by multiple parties to protect common property; and (g) failure to make any mortgage payments for a long time.[4] And although two bankruptcy cases does not seem to fit the standard definition of "multiple," there is no per se rule that two bankruptcy cases cannot support a claim for in rem stay relief under § 362(d)(4). *See In re Giambrone*, 600 B.R. 207, 213 (Bankr. E.D.N.Y. 2019) ("[R]elief under § 362(d)(4) may be warranted upon the filing of two bankruptcy cases affecting the same real property."). Two successive bankruptcy cases might support a claim for in rem stay relief under § 362(d)(4) if there are no changed circumstances for the Debtor and the facts surrounding the

---

[4] *See, e.g., Lee*, 467 B.R. at 921(discussion relating to factors (a), (b), (c) and (g)); *In re Lindsay*, No. 20-10339-JLG, 2021 WL 278317, at *7 (Bankr. S.D.N.Y. Jan. 27, 2021) (discussion relating to factors (a), (b) and (d)); *In re Montalvo*, 416 B.R. 381, 387 (Bankr. E.D.N.Y. 2009) (discussion relating to factors (a), (b), (d), and (g)); *In re Henderson*, 395 B.R 893, 901-02 (Bankr. D.S.C. 2008) (discussion relating to factors (a), (c), (e), and (f)).

filing of both cases indicate that both cases were filed to delay the creditor's foreclosure efforts. *See, e.g., In re Hymes*, No. A12-00599-GS, 2013 WL 653060, at *5 (Bankr. D. Alaska Feb. 20, 2013) (debtors' two cases filed four years apart and filed on the eve of scheduled foreclosure sales supported in rem stay relief under § 362(d)(4) where debtors were evasive in their testimony regarding the purpose of their current filing).

Applying these factors to Debtor's case and weighing the surrounding facts and circumstances as a whole, the Court concludes that Debtor has not filed this bankruptcy case as part of a scheme to hinder, delay, or defraud RPF. The First Bankruptcy Case and the Second Bankruptcy Case both involve the same Property. However, the First Bankruptcy Case was filed before RPF initiated its foreclosure action, so, even though the Second Bankruptcy Case was filed on the eve of the scheduled foreclosure trial, Debtor has not filed serial bankruptcy cases to stop a foreclosure. This bankruptcy case is only Debtor's second bankruptcy case and was filed more than six years after the First Bankruptcy Case. Two filings more than six years apart does not suggest that Debtor is abusing the bankruptcy system with the singular purpose of thwarting a creditor's efforts to foreclose its collateral.[5] Debtor fulfilled her bankruptcy obligations in the First Bankruptcy Case and received a chapter 7 discharge.

RPF asserts that the two loan modifications, made after Debtor was granted a discharge in the First Bankruptcy Case and under which Debtor made only one payment, were part of Debtor's scheme to hinder and delay RPF's foreclosure efforts. But other than Debtor's non-

---

[5] In stark contrast to the facts of this case, other cases granting in rem stay relief under § 362(d)(4) often involve upwards of four bankruptcy filings, some involving tag team alternate filings. *See, e.g., In re Jacobs*, No. 19-12951-j11, 2021 WL 2098921 (Bankr. D.N.M. May 24, 2021) (seven prior bankruptcy filings by debtor or debtor's spouse, six involving the property at issue); *Smith*, 395 B.R. at 714 (six bankruptcy cases filed in five years); *Montalvo*, 416 B.R. at 387 (six "strategically timed" bankruptcy filings); *In re Briggs*, No. 12-bk-14853, 2012 WL 3780542, at *4 (Bankr. N.D. Ill. Aug. 31, 2012) (ten bankruptcy filings involving the property filed by debtor or her brother).

13

payment, there is no evidence from which the Court can infer that Debtor entered into the First Loan Modification and the Second Loan Modification as part of an artful plot to hinder RPF with no intention of making the payments. Nothing prevented RPF from completing its foreclosure action initiated in 2016 before Debtor filed the Second Bankruptcy Case in 2021. Further, a comparison of Debtor's Schedule I filed in the First Bankruptcy Case and the Second Bankruptcy Case indicates changed circumstances. Debtor now operates a home childcare business, and Schedule J shows positive net monthly income. Debtor has been making the monthly plan payments to the chapter 13 Trustee as proposed in her Chapter 13 plan.

In sum, even though Debtor has filed two bankruptcy cases affecting the Property, made only one payment to RPF since 2016, defaulted on both the First Loan Modification and the Second Loan Modification, and filed the Second Bankruptcy Case on the eve of the scheduled foreclosure trial, such evidence is insufficient to establish that Debtor filed the Second Bankruptcy Case as part of a scheme to hinder, delay, or defraud RPF. Debtor filed the Second Bankruptcy Case in an attempt to salvage her home. Whether she can confirm her chapter 13 plan as proposed is a separate issue requiring evidence of the Property's value that the Court has yet to determine.

## CONCLUSION

Based on the foregoing, the Court concludes that RPF is not entitled to relief from the automatic stay for "cause" under 11 U.S.C. § 362(d)(1). Nor is in rem stay relief under 11 U.S.C. § 362(d)(4) warranted. Valuation of the Property is key to the outcome of this bankruptcy case. That determination will be made as part of plan confirmation, currently scheduled for August 10, 2021. If RPF is correct and the Property is worth more than all liens against it, Debtor will not be able to strip off RPF's second mortgage as wholly unsecured and confirmation of Debtor's

chapter 13 plan will be denied.[6] But at this juncture, the Court will not grant relief from the automatic stay under either § 362(d)(1) or § 362(d)(4).[7]

The Court will enter a separate order consistent with this Memorandum Opinion.

_/s/ Robert H. Jacobvitz_
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 4, 2021

COPY TO:

Jason Michael Cline
Attorney for Debtor
Jason Cline, LLC
2601 Wyoming Blvd. NE
Suite 108
Albuquerque, NM 87112

Robert M Strumor
Attorney for Real Property Financial, PSP
Waggoner Legal Group
529 W. San Francisco
Santa Fe, NM 87501

---

[6] Denial of confirmation may constitute grounds for dismissal of Debtor's chapter 13 case. *See* 11 U.S.C. § 1307(c)(5) ("[O]n request of a party in interest . . . and after notice and a hearing, the court may . . . dismiss a case under this chapter . . . for cause, including . . . denial of confirmation of a plan under section 1325 of this title and a denial of a request made for additional time for filing another plan or a modification of a plan . . . ."). If confirmation is denied because Debtor is unable to strip off RPF's lien based on the value of the Property, Debtor may be permitted to file an amended plan, but the amended plan will have to provide for payment of RPF's claim. *See* 11 U.S.C. § 1322(b)(2) and (c).

[7] At the confirmation hearing, the Court will consider whether to condition continuation of the automatic stay on Debtor obtaining insurance on the Property.